IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHEILA LONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-cv-168-TLW |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff, Sheila Long, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's application for disability benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

## INTRODUCTION

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, the current Acting Commissioner of the Social Security Administration, is substituted for Michael J. Astrue as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## BACKGROUND

Plaintiff, then a forty-nine[2] year old female, applied for disability benefits and supplemental security income benefits on October 15, 2008, alleging a disability onset date of February 21, 2007. (R. 139-42, 143-45). Plaintiff alleged that she was unable to work due to Hepatitis C, carpal tunnel syndrome, tendonitis, and arthritis. (R. 160). At the ALJ hearing, plaintiff also cited issues with back pain, TMJ, stiffness in her hands, depression, and anxiety. (R. 44-50). Plaintiff's applications were denied initially and on reconsideration. (R. 65-780, 85-89). Plaintiff then requested a hearing before an ALJ, which was held on June 15, 2010. (R. 34-64, 90-91). Following the hearing, the ALJ issued a decision finding plaintiff not disabled. (R. 9-33). Plaintiff submitted additional medical records to the Appeals Council, which denied review of plaintiff's case, making the ALJ's decision the Commissioner's final decision. (R. 1-5). Plaintiff filed a timely appeal.

---

[2] The record gives two different birth dates for plaintiff: 1958 and 1959. Plaintiff's applications list her birth year as 1959, and no birth certificate is included in the record; therefore, the Court has adopted 1959 as plaintiff's birth year.

**The ALJ's Decision**

The ALJ noted that plaintiff was insured under Title II through March 31, 2008, and had not performed any substantial gainful activity since February 21, 2007. (R. 14). The ALJ found that plaintiff had a number of impairments "which, in combination, are severe: hepatitis C (HVC), TMJ, history of carpal tunnel syndrome (CTS), arthritis, tendonitis." Id. The ALJ also found that plaintiff's depression was a medically determinable medical impairment but was nonsevere because it did not cause more than minimal limitations in plaintiff's ability to perform basic mental work activities. Id. The ALJ reached this conclusion after reviewing the "paragraph B" criteria and plaintiff's records regarding her mental health treatment. (R. 15-16). The ALJ also determined that plaintiff's impairments did not meet or medically equal a listing. (R. 16). The ALJ gave special consideration to Listings 1.00 (disorders of the musculoskeletal system), 5.00 (disorders of the digestive system), and 12.00 (mental disorders). Id.

The ALJ then reviewed the medical evidence and plaintiff's hearing testimony. (R. 16-25). The ALJ discussed, in great detail, a Medical Source Statement from Dr. Terry Hoyt. (R. 17-20). The ALJ categorized Dr. Hoyt as a treating physician, although the ALJ noted in his analysis of the treating physician rule that Dr. Hoyt "has not had a longitudinal relationship with claimant" and would be better categorized as a "'non-treating' physician." (R. 19). The ALJ cited to a lack of support for Dr. Hoyt's findings, both in Dr. Hoyt's treatment notes and in the larger medical record. (R. 18). The ALJ also cited a lack of consistency between Dr. Hoyt's opinion and the record as a whole. (R. 18, 20). With respect to plaintiff's allegations of mental impairment, the ALJ found that Dr. Hoyt was not a mental health specialist, had not reviewed the psychological evaluation, and had not referred plaintiff for mental health treatment. (R. 20). The ALJ concluded that Dr. Hoyt's opinion was entitled to no weight. Id.

The ALJ reviewed a number of records dealing with plaintiff's high blood pressure, her lack of treatment and symptoms following her Hepatitis C diagnosis, and her diagnosis of degenerative disc disease. (R. 21-22). Plaintiff also received "little actual treatment" for her mental impairments. (R. 24). The ALJ found that plaintiff had no treatment "proximate to" her alleged disability onset date of February 21, 2007. (R. 15). In fact, plaintiff only sought treatment in August 2009, even though she had a possible suicide attempt in January 2009. Id. Plaintiff refused treatment at that time, walking out of the evaluation while she was still at the hospital in order to smoke. Id.

The ALJ categorized plaintiff's medical records as "relatively thin," a finding that prompted the ALJ to order consultative physical and mental examinations. (R. 22). The ALJ found that plaintiff's physical examination, conducted on March 5, 2009, was normal, although the consultative examining physician diagnosed plaintiff with "chronic low back pain, probably due to L5-S1 degenerative disc disease." (R. 22-23). Plaintiff's consultative mental examination, conducted on December 17, 2008, was also generally unremarkable, resulting in a diagnosis of "major depression, recurrent, mild in severity." (R. 15).

Based on the medical findings, the ALJ concluded that plaintiff's allegations of disability were not credible. (R. 23-25). The ALJ acknowledged that plaintiff "may indeed experience some discomfort from her impairments." (R. 24). However, after reviewing "the conservative nature and the infrequency of medical treatment required, the reports of treating and examining practitioners, the medical history, the findings made on examination, the claimant's demeanor at the hearing and the marked discrepancies between her allegations and the information contained in the documentary reports," plaintiff's claims of disabling pain and severely limited activities of daily living were simply not credible. (R. 25).

Accordingly, the ALJ determined that plaintiff retained the residual functional capacity to perform light work with additional restrictions on hand movements, work performed above shoulder level, and more than occasional stooping, kneeling, crouching, crawling, and climbing. (R. 16). Plaintiff's residual functional capacity prevented her from performing her past relevant work as a waitress. (R. 25). However, the ALJ relied on the testimony of a vocational expert to conclude that plaintiff could perform other work, such as a "sander of small parts, cleaner, and laundry folder." (R. 26). Therefore, the ALJ found plaintiff was not disabled. Id.

**Plaintiff's Medical Records**

The ALJ gave a detailed analysis of plaintiff's medical records through the date of the ALJ's decision, including a consultative physical examination and a consultative mental examination. For this reason, the Court will discuss only those records that bear directly on the Court's analysis, including the additional medical records that were accepted by the Appeals Council.

Records Documenting Plaintiff's Back Pain

In August 2006, plaintiff reported falling at work. (R. 251-4, 258-59). At the time, she complained of lower back pain, right knee pain, and right elbow pain. (R. 258-59). Plaintiff's injuries did not present as severe injuries. (R. 251-54, 258-59). Plaintiff's back was tender to palpitation, but she retained full range of motion. (R. 258-59). Her complaints of radicular pain were inconsistent with her symptoms. Id. She had minimal swelling only in her right knee. Id. She was diagnosed with contusions to her right elbow[3] and knee and with lumbar strain. Id. She was prescribed medication and released to return to work with restrictions. Id.

---

[3] A subsequent MRI showed that plaintiff suffered a "partial extensor tendon tearing" in her right elbow. (R. 313). She received treatment and was released from care fully recovered in August 2007. (R. 311).

6

Plaintiff continued to complain of back pain. In February 2007, an MRI revealed degenerative disc disease with acute injury at L5-S1. (R. 301-02, 319-20). She was later prescribed six weeks of physical therapy, but plaintiff failed to attend many of those sessions. (R. 282-300, 316-17). Plaintiff continued to complain of back pain intermittently; however, almost all of plaintiff's medical records stem from emergency room visits rather than regular treatment. Plaintiff was scheduled to receive steroid injections after physical therapy failed to relieve her symptoms, but as reported in September 2007, plaintiff failed to attend those appointments. (R. 310). In January 2009, plaintiff sought treatment at the emergency room for neck and shoulder pain caused by an automobile accident. (R. 248-57). X-rays revealed degenerative disc disease at C4-C5 and C6-C7, but no acute injury. Id.

Dr. Hoyt and the Medical Source Statement

With respect to Dr. Hoyt's Medical Source Statement, Dr. Hoyt first treated plaintiff in the emergency room on June 1, 2009, for hypertension.[4] (R. 388-99). At that time, plaintiff had no complaints of physical pain or anxiety. (R. 392). Plaintiff was prescribed medication and released. (R. 388-99).

On June 30, 2009, plaintiff was back in the emergency room for high blood pressure. (R. 403-23). This time, plaintiff also complained of anxiety related to the increase in her blood pressure. (R. 409). She was diagnosed with hypertensive urgency and admitted to the hospital overnight under the care of Dr. Hoyt. (R. 410). Dr. Hoyt's progress notes state that plaintiff "ran out of lorazepam and got emotionally upset." (R. 411). Plaintiff was also experiencing a headache, numbness in her face and difficulty with speech as a result of the hypertensive urgency. (R. 411, 412-13). After receiving medication, plaintiff improved and was released. (R.

---

[4] The ALJ's decision contains a scrivener's error identifying this visit as occurring on January 1, 2009. (R. 21).

411). Dr. Hoyt listed additional diagnoses on his discharge summary including anxiety, post-traumatic stress disorder, Hepatitis C, and "Trigger fingers." (R. 412-13). He included a notation at the end of the discharge summary that stated as follows:

> She is advised that I will assist her in any way that I can in helping her get her Social Security disability, and once she does have some type of medical coverage further studies to work up her Hepatitis C need to be done, as well as definitive treatment of her trigger fingers. She agrees to see Ms. Finney at the Health and Wellness Center for now.

(R. 413).

Dr. Hoyt did not see plaintiff again until August 5, 2009, when she sought care from him at SMH Family Medicine. (R. 556). At that time, she complained of mid-back pain from a recent fall. Id. After examination, Dr. Hoyt diagnosed plaintiff with a number of issues, including degenerative joint disease of the hands, back, and knees; vision loss; and generalized anxiety disorder. Id. That day, he completed the Medical Source Statement in which he found that plaintiff was so severely limited in her ability to perform work activities that she was disabled. (R. 433-38). Again, Dr. Hoyt noted that he intended to assist plaintiff in getting disability benefits in order to provide medical treatment. (R. 438).

Dr. Hoyt only saw plaintiff for one more appointment on November 24, 2009. (R. 555). This time, his diagnoses were limited to degenerative joint disease, generalized anxiety disorder, and Hepatitis C. Id. He prescribed routine medications and recommended Hepatitis C blood work when plaintiff could afford it. Id. At the bottom of the treatment notes, he wrote "still waiting on disability." Id.

8

Records Accepted by the Appeals Council

The Appeals Council accepted a number of records that documented treatment plaintiff received after the ALJ's decision.[5] (R. 1-5, 773-873). Some of the records from plaintiff's emergency room visits are duplicates of records that the ALJ had already received, but most of the new records relate to plaintiff's mental health treatment. (R. 773-873).

Those medical records document a suicide attempt/drug overdose on September 18, 2010, and plaintiff's mental health treatment following the ALJ hearing.[6] Id. The mental health records document plaintiff's hospital stay following the suicide attempt, up to the time of her transfer to a behavioral health facility. (R. 817-57). The only other evidence of mental health treatment is documentation from Family and Children's Services, dated May and June 2011, and the mental Medical Source Statement dated October 14, 2010. (R. 773-75, 858-73).

The mental Medical Source Statement was completed by a licensed professional counselor approximately one month after plaintiff's suicide attempt. (R. 773-75). The form indicates that plaintiff had marked limitations in almost every category. Id. The counselor stated that plaintiff had been diagnosed with "post-traumatic stress syndrom [sic] and schizophrenia," had paranoia, experienced auditory and visual hallucinations, and "has a hard time grasping reality at times." (R. 775). The counselor concluded that plaintiff would not be able to maintain a job. Id.

---

[5] At the ALJ hearing, the ALJ identified Exhibits 1A through 34F as those records submitted before the hearing. (R. 36). Plaintiff brought two additional exhibits, 35F and 36F, to the hearing. Id. The Appeals Council identified Exhibits 36F through 40F as the new evidence added to the record. (R. 1-5). Based on the date of Exhibit 36F, a mental source statement dated October 14, 2010, the two exhibits presented at the hearing on June 15, 2010, must have been consolidated for purposes of the administrative record, into Exhibit 35F. (R. 36, 773-75).

[6] The medical records also contain treatment notes for continuing issues with hypertension and elbow pain. (R. 787-857).

The licensed professional counselor who completed the intake process at Family and Children's Services determined that plaintiff suffered from post-traumatic stress disorder; major depressive disorder, recurring, moderate; and amphetamine dependence. (R. 867-68). Despite those diagnoses, however, plaintiff was only scheduled for a six-month treatment plan that included medication management and therapy sessions. (R. 858-73). Plaintiff attended her first session, but the record contains no other evidence that she attended treatment. (R. 872-73).

**The ALJ Hearing**

The ALJ held a hearing on June 15, 2010. At that hearing, plaintiff testified that she had previously worked as a waitress, a cook, and a line worker at a chicken processing plant. (R. 38-39). Plaintiff testified that she had a history of drug use (methamphetamine) but had not used illegal drugs for over three years. (R. 43).

With respect to her ability to work, plaintiff testified that she had trouble with math. (R. 42). She said that she never checks her change when she shops because she assumes that the cashiers know how to calculate change. Id. She testified to pain in her right leg, arm, and knee stemming from her on-the-job injury in 2006, as well as back pain. (R. 43-44). Plaintiff stated that she simply lived with the pain. (R. 44). She suffered from TMJ, which caused headaches, and her hands would "lock." (R. 45). Plaintiff stated that Dr. Hoyt's assessment of her physical limitations was accurate. Id. At home, she sits on the sofa because she finds regular chairs too uncomfortable. (R. 55).

Mentally, plaintiff has difficulty remembering to take her medication and sometimes took multiple doses. (R. 46). She sleeps most of the day because she feels depressed and anxious. (R. 47-50). She becomes sad watching television, so she spends her waking hours looking out the window or reading. (R. 49-50). She is unable to care for her grandchildren because she cries too

much. (R. 49-50). Plaintiff also testified that she loses her temper with her family and acts "ugly." (R. 51). She hears voices in her dreams. (R. 52). Counseling helped, although plaintiff stated that she cried during every counseling session. (R. 50). Her Hepatitis C diagnosis made her feel guilty, ashamed, and tired. (R. 52). Plaintiff also admitted to using marijuana to self-medicate. (R. 54). Plaintiff concluded that she originally believed that she was unable to work due to physical issues, but now she believed that she was disabled due to her mental condition. (R. 56).

Finally, the ALJ and plaintiff's attorney briefly discussed whether the Medical-Vocational Guidelines ("the Grids") were applicable to plaintiff's case based on her age. (R. 57-58). Without reaching any conclusions, the ALJ then took testimony from a vocational expert. (R. 58-64). The ALJ posed a number of hypotheticals, including one consistent with his ultimate findings regarding plaintiff's residual functional capacity. (R. 57-64). The vocational expert testified that plaintiff could perform other work under those circumstances. (R. 60).

## ANALYSIS

On appeal, plaintiff raises three points of error: (1) that the ALJ erred in failing to find that plaintiff suffered from a severe mental impairment and in failing to include those limitations in his residual functional capacity analysis; (2) that the ALJ erred in conducting the treating physician's analysis of Dr. Hoyt's Medical Source Statement; and (3) that "the ALJ mechanically applied the grids" in an improper manner. (Dkt. # 17).

### Severe Mental Impairment

The ALJ found that plaintiff's depression was nonsevere. (R. 14-16). The ALJ relied on plaintiff's limited mental health treatment history, as the record stood at the time of the ALJ's decision, as well as the consultative mental examination that the Commissioner ordered and the

non-examining physician's opinions. (R. 15-16). The ALJ concluded that plaintiff had failed to meet her burden to establish a severe mental impairment. (R. 16).

Plaintiff argues that the consultative mental examination and plaintiff's testimony at the hearing support a finding that plaintiff's depression was a severe impairment. (Dkt. # 17). Specifically, plaintiff argues that the mental examination revealed cognitive issues and that plaintiff's testimony supported that finding. Id. Plaintiff had difficulty with short-term memory, naming recent presidents and large cities, and counting backwards in threes. Id. Plaintiff also testified that she has trouble managing her medications, that she cries often and cannot be around other people, and that she cannot effectively communicate. Id.

The Court finds that the ALJ's findings are well-supported by the evidence plaintiff cites in her brief. The ALJ discussed the consultative mental examination in detail, noting that the psychologist found plaintiff to have normal thought processes and "adequate" concentration. (R. 16, 328-33). Although plaintiff had a diagnosis of depression, the psychologist found it to be mild. (R. 15, 328-33). The ALJ concluded that plaintiff had mild limitations, and plaintiff did not present any additional evidence to meet her burden of proof.

Because plaintiff's mental impairment was nonsevere, the ALJ was not required to include any limitations at step four. Rather, the ALJ need only demonstrate that he considered all of plaintiff's impairments, both severe and nonsevere. See SSR 96-8p. The ALJ's thorough discussion of plaintiff's mental health treatment through the date of the hearing, including a lengthy discussion of GAF scores, indicates that he did consider all of plaintiff's impairments. The ALJ was not required to include them in his residual function capacity findings or in his hypothetical to the vocational expert because the ALJ "must include all (and only) those

impairments borne out by the evidentiary record." Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995) (citations omitted).

### Waiver

Ordinarily, the foregoing conclusion would end the inquiry. In its review, however, the Court found that plaintiff's subsequent mental health treatment, as reflected in the exhibits accepted during the Appeals Council's review, may indicate that plaintiff's mental impairment could be a severe impairment. However, plaintiff does not cite to those records to support her argument; therefore, the Court finds that plaintiff has waived this argument with respect to the weight that the new evidence would carry. See Anderson v. United States Dep't of Labor, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue."). The Court, nonetheless, further addresses this evidence below.

### Evidence Accepted by the Appeals Council

Plaintiff likely failed to address this evidence because the Appeals Council should not have accepted it because the new evidence does not meet the requirements of the regulations. See 20 C.F.R. §§ 404.970(b) and 416.1470(b). The Tenth Circuit has "repeatedly held that whether evidence [submitted to the Appeals Council] is 'new, material and chronologically pertinent is a question of law subject to our *de novo* review.'" Krauser v. Astrue, 638 F.3d 1324, 1328-29 (10th Cir. 2011) (quoting Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003)). The Tenth Circuit has noted the difference, however, between the Appeals Council's decision to accept new evidence, which constitutes "an implicit determination [that it is] . . . qualifying new evidence," and the Appeals Council's decision to reject new evidence. Id. (quoting Martinez v. Barnhart, 444 F.3d 1201, 1207-08 (10th Cir. 2006)). If the Commissioner were permitted to challenge the Appeals Council's acceptance of new evidence, the Commissioner would essentially be

13

challenging his own ruling and "would inherently be offering a new, post-hoc rationale for its decision." Id. The Tenth Circuit stated, without deciding the issue, that "there may be good reason to hold the agency to its own decision when the Appeals Council accepts new evidence, even though we exercise de novo review when the claimant challenges the Appeal[s] Council's rejection of such evidence." Id. at 1329. Accordingly, the Court accepts the Appeals Council's decision to include the new evidence without conducting a *de novo* review, even though it is clear that the newly accepted evidence does not comply with 20 C.F.R. §§ 404.970(b) and 416.1470(b).

When the Appeals Council accepts new evidence, that evidence "becomes part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence." O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994). Because the ALJ did not have the new evidence before him when he rendered his decision denying benefits, the Commissioner's "'final decision' necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Id. In other words, the Court is required "to determine whether the qualifying new evidence upsets [the ALJ's] decision." Martinez v. Astrue, 389 Fed.Appx. 866, 869 (10th Cir. 2010) (unpublished). The Court is not automatically required to remand the case for the ALJ to reconcile any conflicts between the ALJ's findings and the new evidence.

Although the Court finds that plaintiff waived the issue, the Court has reviewed the new evidence accepted by the Appeals Court and has determined that the new evidence would not upset the ALJ's decision. Plaintiff was hospitalized in September 2010 for a suicide attempt and subsequently transferred to a mental health facility. (R. 817-57). However, the medical records do not cover any mental health treatment that plaintiff received after the transfer.

The only other evidence of plaintiff's mental health treatment after her suicide attempt is the mental Medical Source Statement and the records from Family and Children's Services. (R. 773-75, 858-73). Those two sources are contradictory, and neither opinion was rendered by an acceptable medical source. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

The regulations divide medical opinion evidence into two categories: "acceptable medical sources" and "other sources." See SSR 06-03p; 20 C.F.R. §§ 404.1502, 404.1513, and 404.1527. "Acceptable medical sources" include licensed physicians, psychologists, and psychiatrists, and these sources are the only professionals who can provide evidence to establish a medically determinable impairment. See 20 C.F.R. § 404.1513(a); SSR 06-03p. "Acceptable medical sources" are also the only professionals who qualify as treating physicians, whose opinions may be given controlling weight. See 20 C.F.R. §§ 404.1502, 404.1527(d); SSR 06-03p.

"Other sources" cannot establish a medically determinable impairment, but an ALJ is permitted to rely on "other sources" to "show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d). The term "other sources" encompasses certain types of medical personnel, as well as lay persons. See 20 C.F.R. § 404.1512(d). SSR 06-03p describes "other source" medical personnel as "medical sources who are not 'acceptable medical sources.'" SSR 06-03p. These medical personnel include nurse practitioners, physician's assistants, and chiropractors. See 20 C.F.R § 404.1513(d). Their opinions are valuable because "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, [these professionals] have increasingly assumed a greater percentage of the

treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p.

SSR 06-03p "clarifies how [the Commissioner] consider[s] opinions and other evidence from medical sources who are not 'acceptable medical sources.'" SSR 06-03p. The ruling states that the factors set forth in 20 C.F.R. § 404.1527(c)(2)[7] to analyze medical source opinions "can be applied to opinion evidence from 'other sources'" because "[t]hese factors represent basic principles that apply to the consideration of all opinions from medical sources." SSR 06-03p. The ruling also states that "[n]ot every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." Id. Accordingly, the ALJ should consider the following factors: (1) the length and nature of the treatment relationship; (2) the evidence given by the other source that supports the opinion; (3) the consistency between the opinion of the other source and the record before the ALJ; (4) the other source's expertise or specialization, if any; and (5) other factors. See 20 C.F.R. § 404.1527(c)(1) – (6); SSR 06-03p.

In this case, plaintiff did not have a real treating relationship with either licensed professional counselor. The mental Medical Source Statement stands alone, without any evidence to indicate the context in which the counselor rendered her opinion. Similarly, the records from Family and Children's Services indicate that plaintiff only attended the intake process and one session. These two opinions contradict each other, and the mental Medical Source Statement contradicts the rest of the record with respect to plaintiff's mental impairment. They should be given no weight and, therefore, would not impact the ALJ's decision.

---

[7] At the time the Commissioner issued SSR 06-03p, the correct citation to the factors was 20 C.F.R. § 404.1527(d).

16

For these reasons, the Court finds that the evidence submitted to the Appeals Council is insufficient to warrant overturning the ALJ's opinion

**Treating Physician's Analysis**

Plaintiff also argues that the ALJ failed to properly consider Dr. Hoyt's opinion about plaintiff's limitations. (Dkt. # 17). Plaintiff contends that the ALJ did not conduct a proper analysis of the treating physician factors set forth in the regulations, relying instead on a single factor. Id. The Commissioner argues that the ALJ set forth numerous, legitimate, specific reasons for discounting Dr. Hoyt's opinion. (Dkt. # 18).

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see also Hackett v. Barnhart, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 Fed.Appx 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

In determining whether the opinion should be given controlling authority, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the

inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished)[8].

---

[8] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

The Commissioner properly notes that Dr. Hoyt should likely not qualify as a treating physician. (Dkt. # 18). Dr. Hoyt saw plaintiff three times between July 2009 and November 2009. He rendered his opinion regarding plaintiff's disability during the second visit in August 2009. The ALJ alluded to this issue, stating that Dr. Hoyt might "be more appropriately considered a 'non-treating' physician." (R. 19) (emphasis omitted). Because the ALJ ultimately did consider Dr. Hoyt a treating physician, the Court will analyze the ALJ's analysis of Dr. Hoyt's opinion using the treating physician's analysis.

In this case, the ALJ did focus his analysis on the third factor, the lack of relevant evidence to support Dr. Hoyt's findings, but that is not the only factor that the ALJ considered. The ALJ specifically noted the brief treating relationship between plaintiff and Dr. Hoyt, stating that "Dr. Hoyt really has not had a longitudinal relationship with claimant." Id. The ALJ also analyzed the nature of the treating relationship and Dr. Hoyt's knowledge, which focused on plaintiff's hypertension and other physical problems. Id. The ALJ correctly held that Dr. Hoyt did not treat plaintiff's mental condition or refer her to other doctors for care. (R. 19-20). Finally, the ALJ found that Dr. Hoyt's opinion was inconsistent with the record as a whole. (R. 20).

The ALJ's reasons for rejecting Dr. Hoyt's opinion are specific and closely follow the required regulatory factors for consideration of a treating physician's opinion. Accordingly, the ALJ did not err in his handling of Dr. Hoyt's opinion.

**Application of the Grids**

Finally, plaintiff argues that the ALJ improperly applied the Grids. As the ALJ's opinion clearly states, application of the Grids was improper because plaintiff could not perform the full range of light work. (R. 26). The ALJ's finding that plaintiff could perform other work was based on the vocational expert's testimony. Reliance on the vocational expert's testimony, rather

than the Grids, was proper. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993); Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991).

## CONCLUSION

Based upon the foregoing, the Court **AFFIRMS** the decision of the Commissioner.

SO ORDERED this 27th day of September, 2013.

_____
T. Lane Wilson
United States Magistrate Judge